UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

**FILED**

99 FEB 22 AM 11: 01

U.S. DISTRICT COURT
N.D. OF ALABAMA

SHEILAH SCHEURICH,                 )
                                   )
        Plaintiff,                 )
                                   )
vs.                                )     Civil Action No. CV 97-S-2787-NE
                                   )
HUNTSVILLE HOSPITAL                )
SYSTEMS, INC.,                     )
                                   )
        Defendant.                 )

ENTERED

FEB 22 1999

## MEMORANDUM OPINION

Plaintiff commenced this action on October 21, 1997, alleging she suffered discrimination on the basis of sex and retaliation for protected expression.[1] She seeks declaratory and injunctive relief, reinstatement, and damages pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. The action presently is before the court on defendant's motion for summary judgment.[2]

## I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

---

[1] Plaintiff abandons her constructive discharge claim. (See plaintiff's brief in opposition at 6 n. 1.)

[2] Plaintiff has submitted motions to strike the affidavits of Andrea P. Rosler and Randy Hester. These motions are resolved in a separate order entered contemporaneously herewith.

moving party is entitled to judgment as a matter of law. ..."
(Emphasis added.)  The movant bears the initial burden of showing
the court, by reference to materials on file, that no genuine
issues of material fact exist to be decided at trial.  *See Celotex
Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265
(1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir.
1991).  The moving party discharges this burden by "showing" or
"pointing out" to the court that there is an absence of evidence to
support the non-moving party's case.  *Jeffery v. Sarasota White
Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995)(*per curiam*).  Rule 56
permits the movant to discharge this burden with or without
supporting affidavits.  *See Celotex*, 477 U.S. at 324, 106 S.Ct. at
2553.  When the moving party has discharged its burden, the
non-movant must go beyond the pleadings and designate specific
facts showing there is a genuine issue for trial.  *See Jeffery*, 64
F.3d at 593.

In deciding whether the moving party has met its burden, the
court is obligated to draw all inferences from the evidence
presented in the light most favorable to the non-movant and, also,
to resolve all reasonable doubts in that party's favor.  *See Spence
v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989).  Inferences in favor
of the non-movant are not unqualified, however.  "Mere general

2

allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted). Moreover, evidence that is merely colorable, *see Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988), conclusory, *see Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989), or conjectural, does not create a genuine issue of material fact.

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment. *See Augusta Iron & Steel Works v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988). A "genuine" dispute about a material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jeffery*, 64 F.3d at 594 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The bottom line is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. at 2512.

3

With the foregoing standards in mind, the following facts either are not disputed, or are stated in a light most favorable to plaintiff.

## II. STATEMENT OF THE FACTS

Plaintiff, Sheilah Scheurich, was employed by defendant, Huntsville Hospital Systems, Inc. (the "Hospital"), as a Senior Systems Analyst for the Hospital's Information Services Department. Scheurich worked in that position from September 26, 1994 until July of 1996. She performed technical tasks adequately throughout her employment. Problems arose in her relations with others, however, particularly with her supervisor, Randy Hester. Scheurich resigned her position during July of 1996.

Scheurich contends that Hester treated her differently because he resented an assertive woman who voiced her opinions strongly. She describes herself as a "strong, assertive woman" (plaintiff's deposition, Vol. I, at 41), who is "critical," "emotional," "demanding," and whom others may find "intimidating" or even "bitchy" (plaintiff's deposition, Vol. II, at 5-7).

When Scheurich began working for the Hospital, Carole Webber was her supervisor. Some months later, Webber expressed to Andrea Rosler, the Hospital's Vice President of Human Resources, concern about Scheurich's conduct toward co-workers.

4

In July of 1995, Randy Hester replaced Webber as the Hospital's Director of Financial and Business Systems and, as such, became Scheurich's supervisor. Problems developed between the two, which led Rosler to direct counseling for both and disciplinary measures against Scheurich. Scheurich contends these problems resulted from Hester's resentment of her because she is an assertive woman, and, from his poor management. She argues she was discriminated against because of her sex when she was subjected to counseling and disciplinary measures. A history of these problems and the reactions thereto follows.

Hester advised Rosler during October of 1995 that Scheurich had been resisting his instruction and, in particular, had refused to prepare a log of her activities as he had instructed. Scheurich refused his instruction when, as in this instance, she believed it to be discriminatory. Scheurich contends that similarly situated males were not made to prepare such a record of their activities. When Scheurich ultimately shared her reasoning with Hester, he became angry and denied he was imposing disparate requirements because of plaintiff's sex. When pressed by Scheurich, Hester refused to discuss reasons for his instruction.

Rosler and Hester developed an outline of discussion points to help Hester address what Rosler described as "control issues" with Scheurich. (Rosler affidavit, ¶ 4.) Hester and Scheurich met, and

5

Scheurich subsequently sent a memorandum to Hester in which she openly and articulately recapped her version of the meeting. Scheurich recounted that Hester believed she had not responded to assignments he gave her. Scheurich admitted she was not responsive at the beginning of Hester's tenure because she had "gotten used to prioritizing [her] own work and simply forgot that [Hester] was there." (Plaintiff's deposition, exhibit 8, at 1.) Scheurich admitted having had problems in the past in relationships with co-workers because of her strong personality, but was surprised to hear Hester say people in the Hospital were unwilling to work with her because "she came off [as] obnoxious and arrogant." (Id.) Scheurich said she was working on her inter-personal skills, specifically on becoming "less of a bulldog, less intimidating." (Id.) Scheurich added that she had apologized to her co-workers and customers for coming across as difficult to work with, though no one had told her she was difficult. (See id.)

In November, 1995, Scheurich became upset during a payroll system meeting and left the meeting before its completion. Scheurich refused to discuss the incident with Hester. She later informed him that she thought the problems between the two of them were the result of a conflict in personalities, rather than an issue because of their respective employment status at the Hospital.

6

Hester approached Scheurich during April of 1996 about certain other problems with her behavior which had come to his attention. On April 12, Hester met with Scheurich and told her that several co-workers found some comments to be threatening and intimidating. Hester advised her that these comments were inappropriate and that his counseling was not to be discussed with other employees. Nevertheless, Hester received reports that Scheurich had mocked and ridiculed his counseling. Another incident occurred on April 26, when Hester addressed Scheurich about a remark she had made threatening to pull an employee's tonsils out through his toenails. Scheurich contends the remark was a joke, and was received as such. (Scheurich affidavit, p. 3.) Nevertheless, Scheurich told Hester he was being "petty and immature" about the incident. (*See* Hester affidavit, ¶ 8.) She also advised him she would refuse to honor his request to keep the counseling confidential. (*See id.*)

Similar incidents followed in late April and early May of 1996. Scheurich continued her criticism and derision of Hester in the presence of other employees. These incidents led Hester to seek Rosler's assistance again, and ultimately led to Scheurich's claim that Hester's reaction to her was discriminatory.

Scheurich filed the first of two charges of discrimination with the Equal Employment Opportunity Commission on May 7, 1996.

7

In this charge, Scheurich alleged discrimination based on sex. She claimed:

> I am not permitted the latitude that the males are, and am not permitted to express my opinion to the same degree as males. When I attempt to be a strong advocate for a position I believe is right, I am criticized for this. On the date of this charge, I was told that I am intimidating to others and issued a disciplinary warning for this.

(Plaintiff's deposition, exhibit 14.)

An investigation by Rosler ensued. Rosler interviewed the employees who worked around Hester and Scheurich. Rosler found that Scheurich's behavior toward Hester and co-workers frequently was inappropriate. Rosler also conducted meetings with Scheurich and allowed Scheurich to present any information to support her claim of discrimination, or otherwise describe her problems with Hester. Rosler concluded that Scheurich's claims of discrimination on the basis of sex were not credible.

Rosler took disciplinary measures, issuing a "Warning Notice" to Scheurich on May 10, 1996. In the notice, Rosler listed "Insubordination" and "Refusal and failure to follow a supervisor's instruction" as the offenses prompting such discipline. (Plaintiff's deposition, exhibit 15.) The notice warned Scheurich that "further instances" of this type of misconduct "will result in further disciplinary action up to and including termination of employment." (Id.)

8

The final incident between Hester and Scheurich occurred on Saturday, May 25, 1996. Hester was told that several Hospital departments had been unable to log onto the computer system with their assigned passwords. Hester called Scheurich at home and asked if she knew the reason for the problem. Scheurich reported that the password associated with the user account had been lost or encrypted incorrectly. The immediate problem was then solved.

Hester thereafter contacted his manager, Larry Walls. The two were concerned that if additional problems arose over the weekend, the system would be inaccessible. Adding to their concern were reports they had received that Scheurich had threatened retaliatory action if further disciplinary measures were taken against her. The Hospital cites specific concern over the possibility Scheurich might take such action against the computer system. Accordingly, Walls instructed Hester to verify the security status of the password.

Hester contacted Scheurich again and asked her if she had given the password to the Hospital's Data Security Officer. When Scheurich said she had not, Hester instructed her to do so. Scheurich became upset, and accused Hester of "breaking the law" and "harassing" her. (Defendant's brief in support, ¶ 20.) After an initial refusal, she did comply with Hester's instruction, but several hours later.

9

Scheurich contends this instruction was discriminatory, because Hester did not ask for this security information from males who controlled other systems. In deposition, however, Scheurich testified that if Hester had made this request during the work week, this request "wouldn't have been an issue at all." (Plaintiff's deposition, Vol. I, at 103.)

Rosler, when informed of this incident, concluded that Scheurich's reaction to Hester's phone call was inappropriate and Scheurich's initial refusal to comply with his request constituted insubordination. Hence, Rosler took disciplinary action, issuing a "Performance Improvement Counseling" report to Scheurich on June 12, 1996, in which Rosler stated that "[i]mprovement in behavior and performance must be immediate and sustained to avoid further action ... up to and including termination." (Plaintiff's deposition, exhibit 17, at 2.)

Shortly after receiving this warning, Scheurich began searching for another job. She accepted an offer of employment with a different company and at a higher salary on July 18, 1996. Scheurich then resigned from the Hospital.

Scheurich filed a second charge of discrimination with the EEOC on June 14, 1996. In this charge, Scheurich recounts the incident of May 25, 1996 involving the password, and claims she was issued a disciplinary notation because she reported the incident

10

and claimed it was retaliatory.  Scheurich further alleges the

following:

> Since filing the [initial] charge, I have been
> criticized, berated and micro-managed in retaliation for
> my having protested the illegal employment practices of
> my employer. I have also been told that if I complained
> any more about discrimination, I would be discharged. In
> addition, I am having various job functions taken away
> from me and assigned to others since filing of my charge.
> The individuals these functions are being assigned to are
> male consultants, employed outside of the hospital.

(Plaintiff's deposition, exhibit 19.)

The EEOC investigator responded to plaintiff's counsel by

letter dated May 13, 1997, stating the following:

> Based on my analysis of the material which your client,
> Sheilah Jane Scheurich, presented previously, and
> information secured from other sources, I have concluded
> that it is unlikely that additional investigation would
> result in a finding that the law was violated....  I have
> arrived at this conclusion because evidence shows your
> client's allegations that she was not allowed to be
> assertive or an advocate for a certain position was in
> fact a refusal to follow established procedures or direct
> orders of her supervisor.  The evidence shows that her
> former employer had legitimate nondiscriminatory reasons
> for its actions and there is no showing of pretext.  In
> her second charge in which she alleges she was retaliated
> against and harassed, again the employer had a legitimate
> nondiscriminatory reasons [sic] for its direct order to
> her which she initially refused to follow.  Its further
> disciplinary action against her was a result of the
> insubordinate conduct.

(Plaintiff's deposition, exhibit 27, at 1.)  In that letter, the

investigator invited submission of additional information or

evidence.  Having received none, the EEOC issued a "Dismissal and

11

Notice of Rights" on July 31, 1997 for each charge Scheurich had filed. (Plaintiff's deposition, exhibits 25, 26.) Scheurich commenced this action within the applicable period of 90 days from receipt of these notices.

## III. DISCUSSION

### A. Framework of Analysis

To prevail on a Title VII disparate treatment claim, a plaintiff must prove the employer intended to discriminate against her on the basis of sex: i.e., "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (emphasis supplied).

Three forms of proof may be used to establish an employer's intent to discriminate: (1) statistical proof of a pattern of discrimination[3]; (2) direct evidence of a discriminatory animus[4]; or (3) circumstantial evidence. The evaluation of a plaintiff's evidence of the employer's intent differs, depending upon which form of proof is used.

---

[3] See, e.g., Wilson v. AAA Plumbing Pottery Corp., 34 F.3d 1024, 1027 (11th Cir. 1994).

[4] See, e.g., Carter v. City of Miami, 870 F.2d 578, 581-82 (11th Cir. 1989).

12

Sheilah Scheurich presents no direct evidence of discrimination.[5] The court, therefore, will proceed with the analysis for circumstantial evidence.

When evaluating Title VII claims supported by circumstantial evidence, courts are guided by the now-familiar analytical framework announced by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct 1817, 36 L.Ed.2d 668 (1973), and then elaborated in its progeny. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407(1993); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Under that framework, the plaintiff bears the initial burden of establishing a prima facie case of the employer's intent to discriminate on the basis of sex. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine*, 450 U.S. at 252-53, 101 S.Ct. at 1093; *Hicks*, 509 U.S. at 506, 113 S.Ct. at 2746-47.

"Establishment of the prima facie case in effect creates a presumption[6] that the employer unlawfully discriminated against

---

[5] The final disciplinary report issued to plaintiff may contain some direct evidence of retaliation, however. The court addresses this evidence *infra*, in Part III.C.

[6] See Walker v. Mortham, 158 F.3d 1177, 1185 n.10 (11th Cir. 1998), for an excellent discussion of the reasons why presentation of a prima facie case creates "a *presumption*, and not an *inference*, of intentional discrimination." (Emphasis in original.)

13

the employee." *Burdine*, 450 U.S. at 254, 101 S.Ct. 1094 (quoted with approval in *Hicks*, 509 U.S. at 506, 113 S.Ct. at 2747).

The effect of the presumption of discrimination created by the establishment of a prima facie case is to shift to the employer the burden of producing, but <u>not</u> <u>proving</u>,[7] some legitimate, nondiscriminatory reason for the contested employment action. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. The Supreme Court described this shift in the burden of going forward with evidence in the following manner in *Hicks*:

> Thus, the *McDonnell Douglas* presumption places upon the defendant the burden of producing an explanation to rebut the prima facie case — *i.e.*, the burden of "producing evidence" that the adverse employment actions were taken "for a legitimate, nondiscriminatory reason."   ...
> "[T]he defendant must clearly set forth, through the introduction of admissible evidence," reasons for its actions which, if believed by the trier of fact, would support a finding that the unlawful discrimination was not the cause of the employment action.   ...   It is important to note, however, that although the *McDonnell Douglas* presumption shifts the burden of production to the defendant, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff," ....  - In this regard it operates

---

[7] *See, e.g.*, Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed. 207 (1981) ("The defendant need not persuade the court that it was actually motivated by the proffered reasons."); *see also,* Isenbergh v. Knight-Ridder Newspaper Sales, Inc., 84 F.3d 1380, 1386 (11th Cir. 1996) ("This burden on the employer is one of production, not persuasion."); Busby v. City of Orlando, 931 F.2d 764, 77 n.12 (11th Cir. 1991) ("[T]his 'burden of proof' is to be understood as a burden of production, not persuasion.") (citing Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989)).

14

>        like all presumptions as described in Rule 301 of the
>        Federal Rules of Evidence:
>
> > "In all civil actions and proceedings not
> > otherwise provided for by Act of Congress or
> > by these rules, a presumption imposes on the
> > party against whom it is directed the burden
> > of going forward with evidence to rebut or
> > meet the presumption, but does not shift to
> > such party the burden of proof in the sense of
> > the risk of nonpersuasion, which remains
> > throughout the trial upon the party on whom it
> > was originally cast."

*Hicks*, 509 U.S. at 506-07, 113 S.Ct. at 2747 (citations to *Burdine*
omitted).

    If a defendant figuratively sits on its hands, and offers no
"admissible evidence which would allow the trier of fact rationally
to conclude that the employment decision had not been motivated by
discriminatory animus," *Burdine*, 450 U.S. at 257, 101 S.Ct. at
1096, then "the court must award judgment to the plaintiff as a
matter of law . . . ." *Hicks*, 509 U.S. at 509, 113 S.Ct. at 2748.

> As then-Justice (now Chief Justice) Rehnquist pointed out
> long before the *Hicks* decision, we require a defendant,
> on pain of losing the case, to come forward with
> explanations for its actions once a plaintiff has made
> out a prima facie case of discrimination, "because we
> presume these acts, if otherwise unexplained, are more
> likely than not based on the consideration of
> impermissible factors." *Furnco Constr. Corp. v. Waters*,
> 438 U.S. 567, 577, 98 S.Ct. 2943, 2949-50, 57 L.Ed.2d 957
> (1978).

15

*Combs v. Plantation Patterns*, 106 F.3d 1519, 1537 (11th Cir. 1997), *cert. denied sub nom. Combs v. Meadowcraft Co.*, ___ U.S. ___, 118 S.Ct. 685, 139 L.Ed.2d 632 (1998).

To satisfy that burden of production, "[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Burdine*, 450 U.S. at 254-55, 101 S.Ct. at 1094 (citation and footnote omitted).

"If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted," *Burdine*, 450 U.S. at 255, 101 S.Ct. at 1094-95, and "drops from the case." *Id.* at 255 n.10, 101 S.Ct. at 1095 n.10; *accord, Hicks*, 509 U.S. at 507-08, 113 S.Ct. at 2747-48. "A satisfactory explanation by the defendant destroys the legally mandatory inference of discrimination arising from the plaintiff's initial evidence." *Burdine*, 450 U.S. at 256 n.10, 101 S.Ct. at 1095 n.10.

"The defendant's 'production' (whatever its persuasive effect) having been made," *id.*, 509 U.S. at 511, 113 S.Ct. at 2749, "the factual inquiry proceeds to a new level of specificity." *Burdine*, 450 U.S. at 255, 101 S.Ct. at 1095.

> [T]he "new level of specificity" ... refer[s] to the fact
> that the inquiry now turns from the few generalized

16

> factors that establish a prima facie case to the specific
> proofs and rebuttals of discriminatory motivation the
> parties have introduced.

*Hicks*, 509 U.S. at 516, 113 S.Ct. at 2752.

At this third level of analysis, the plaintiff must be
afforded the opportunity to discredit the defendant's proffered
explanations for the contested employment decision, and to show
that it is but a pretext for discrimination. "In other words, the
plaintiff has the opportunity to come forward with evidence,
including the previously produced evidence establishing the prima
facie case, sufficient to permit a reasonable factfinder to
conclude that the reasons given by the employer were not the real
reasons for the adverse employment action." *Combs v. Plantation
Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (citations omitted),
*cert. denied sub nom. Combs v. Meadowcraft Co.*, ___ U.S. ___, 118
S.Ct. 685, 139 L.Ed.2d 632 (1998); *see also Hicks*, 509 U.S. at 507-
08, 113 S.Ct. at 2747-48 ("The plaintiff then has the full and fair
opportunity to demonstrate, ... that the proffered reason was not
the true reason for the employment decision, ... and that race [or
sex] was. He retains that ultimate burden of persuading the [trier
of fact] that [he] has been the victim of intentional
discrimination.") (citations to *Burdine* and internal quotation
marks omitted).

17

If the plaintiff succeeds in casting doubt on the credibility of the explanations put forward by the defendant — in other words, "if there is sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of the employer's proffered reasons for its challenged action" — then "it follows from *Hicks* that a plaintiff is entitled to survive summary judgment, and judgment as a matter of law...." *Combs*, 106 F.3d at 1529; *see also id.* at 1532 ("To summarize, ... this circuit's post-*Hicks* decisions uniformly hold that once a plaintiff has established a prima facie case and has put on sufficient evidence to allow a factfinder to disbelieve an employer's proffered explanation for its actions, that alone is enough to preclude [summary judgment or] entry of judgment as a matter of law.").

Finally, courts must maintain a distinct focus when considering motions for summary judgment in Title VII cases.

> When deciding a motion by the defendant for [summary judgment or for] judgment as a matter of law in a discrimination case in which the defendant has proffered nondiscriminatory reasons for its actions, the district court's task is a highly focused one. The district court must, in view of all the evidence, determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct.... The district court must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a

18

reasonable factfinder could find them unworthy of credence. ...

*Combs*, 106 F.3d at 1538 (citations and internal quotation marks omitted).

## B.  Disparate Treatment Because of Sex

Scheurich does not make clear which theory of discrimination she relies upon. The court construes the argument as presenting a claim for discrimination in the application of discipline for the violation of work rules.

The Eleventh Circuit held in *Jones v. Gerwens*, 874 F.2d 1534 (11th Cir. 1989), that:

> in cases involving alleged racial bias in the application of discipline for violation of work rules, the plaintiff, in addition to being a member of a protected class, must show either (a) that he did not violate the work rule, or (b) that he engaged in misconduct similar to that of a person outside the protected class, and that the disciplinary measures enforced against him were more severe than those enforced against the other persons who engaged in similar misconduct.

*Jones*, 874 F.2d at 1540. That holding was questioned in *Jones v. Bessemer Carraway Medical Center*, 137 F.3d 1306, 1311 n.6 (11th Cir. 1998), where the Eleventh Circuit wrote:

> Considering the facts in *Jones*, our impression is that words about "did not violate the work rule" are unnecessary to the decision in *Jones* and are dicta; but we will discuss them. The pertinent words in *Jones* demand not two, but three elements: (1) the plaintiff is a member of a protected class; (2) the plaintiff has engaged — either (a) disputedly or (b) admittedly — in misconduct similar to persons outside the protected

19

class; and (3) that similarly situated, nonminority
employees (that is, persons outside the protected class)
received more favorable treatment.

    We stress that, under the *Jones* formulation, no
plaintiff can make out a prima facie case by showing just
that she belongs to a protected class and that she did
not violate her employer's work rule. The plaintiff must
also point to someone similarly situated (but outside the
protected class) who disputed a violation of the rule and
who was, in fact, treated better.

    Therefore, to establish a prima facie case of disparate
treatment in the application of disciplinary measures, a plaintiff
must show:    (1) that she is a member of a class of persons
protected by Title VII; (2) that she engaged — either disputedly
or admittedly — in misconduct similar to that of similarly
situated co-employees outside the protected class; and (3) that the
similarly situated co-employees outside the protected class
received more favorable treatment than plaintiff: *i.e.*, despite
such similarities, "the disciplinary measures enforced against her
were more severe than those enforced against the other persons who
engaged in similar misconduct." *Jones v. Gerwens*, 874 F.2d 1534,
1540 (11th Cir. 1989).

    With regard to the second element of a prima facie case,
plaintiff must show that she and the co-workers with whom she
compares herself were "similarly situated in all relevant
respects." *Jones v. Bessemer Carraway Medical Center*, 137 F.3d
1306, 1311 (11th Cir. 1998) (quoting *Holifield v. Reno*, 115 F.3d

20

1555, 1562 (11th Cir. 1997)). Essentially, this means — as the
Tenth Circuit held in *Aramburu v. The Boeing Co.*, 112 F.3d 1398
(10th Cir. 1997) — that the plaintiff must prove: (i) that the
work misconduct allegedly committed by her was the same as, or
substantially similar to work-rule offenses committed by other
employees outside the protected class; and (ii) that both she and
her co-employee comparitors worked under the same supervisors and,
therefore, were subject to the same standards governing performance
evaluations and discipline.

> To assert a claim of disparate treatment, the
> plaintiff must show that [s]he was treated differently
> than other similarly situated employees who violated work
> rules of comparable seriousness.    ...    "Similarly
> situated employees are those who deal with the same
> supervisor and are subject to the same standards
> governing performance evaluation and discipline."    ...
> A court should also compare the relevant employment
> circumstances, such as work history and company policies,
> applicable to the plaintiff and the intended comparable
> employees in determining whether they are similarly
> situated. ...

*Aramburu*, 112 F.3d at 1404.

Sheilah Scheurich is a woman and, therefore, a member of a
class of persons protected by Title VII. She admits or does not
contest that she engaged in the conduct the Hospital defines as
misconduct. Scheurich contends this conduct was similar to that of
similarly situated, male co-employees, yet these co-employees were

21

not subject to disciplinary measures as she was. This court disagrees.

Scheurich cites two incidents involving Hester and one of Scheurich's co-workers: Ivan Rodriguez and Wayne Gray, respectively. In her brief, Scheurich asserts that "male professionals who reported to Hester were just as assertive as she." (Plaintiff's brief at 8.)

> Specifically, she reports that Ivan Rodriguez and Hester had a shouting match after Rodriguez refused Hester's orders to be on call. Rodriguez angrily threw a book down and told Hester that he would not be on call. Wayne Gray, another professional, was also very assertive and outspoken. On one occasion, he told Hester that he was not doing his job properly. Whereas plaintiff was subjected to adverse job action for similar behavior, these males were not.

(*Id.*) The court found two references to these incidents in the evidentiary submissions of defendant.[8] The following colloquy occurred during Scheurich's deposition.

   Q:   What are the names of the assertive males that you say
        were not accorded the same treatment you were?

   A:   Ivan Rodriguez and Wayne Gray.

   Q:   Do you have any instances of them being assertive in the
        manner that you were?

   A:   Yes.

---

[8] Plaintiff presents only her affidavit as evidence and otherwise relies on the submissions of defendant. Her affidavit contains no specific instances supporting the claim of disparate disciplinary treatment. Plaintiff also fails to provide citations to any evidentiary submission to support the specific allegations made in her brief.

22

- Q: And in which their conduct didn't result in any kind of action taken against them?

- A: Wayne was working late one day and he heard a shouting match between Ivan Rodriguez and Randy Hester where Randy had asked him to be on call and he refused to do it. He threw a book down on his desk and said, no. I'm not going to do it. And walked off. Nothing was ever done about it. That's considerably more threatening than what I did.

- Q: Do you have anymore [sic] information about that incident?

- A: No. Other than the fact that we patted Ivan on the back and said, good job for standing up for yourself.

- Q: Were you a witness to that?

- A: No. Wayne was.

- Q: So whatever information you have was basically secondhand?

- A: Yes. Yes.

Shortly following this discussion of the incident involving Rodriguez, the discussion turned to circumstances involving interaction between Hester and Gray.

- Q: Do you have any other information that assertive men were treated differently than you because of their sex?

- A: During many of the interviews that Wayne had with Randy, he would talk with Randy. And he would tell him that he felt that he was not doing his job and was consistently assertive in doing so. And Randy never reacted to that.

- Q: Were you present during any of those discussions?

- A: No.

. . .

23

Q:   Do you have any other information concerning actions of
     assertive men that you say were compatible to yours?

A:   No.

(Plaintiff's deposition, Vol. II, at 163-65.)

The only other evidentiary submission addressing these
allegations is Hester's affidavit, in which he categorically denies
any such interaction with either Rodriguez or Gray. (*See* Hester
affidavit, ¶ 21.)

Scheurich contends that Rodriguez and Gray were similarly
situated to her. The only argument she advances in support of this
contention is that these men are "male professionals who reported
to Hester." (Plaintiff's brief at 8.) Scheurich does not make any
reference to the job either co-employee performs. This is
important because some of the actual disciplinary measures — and
other alleged disparate treatment — Scheurich was subjected to,
were specific to the performance of her job duties or to problems
which arose within her areas of responsibility.

More importantly, however, Scheurich does not cite instances
of similar conduct for which she was disciplined. Rather,
Scheurich relies upon the general assertion that her difficulties
with Hester resulted from her "assertiveness." The conduct for
which Scheurich was disciplined included several violations of work
rules, only one of which was "not responding to assignments [she
had] been given by [Hester]." (Plaintiff's deposition, exhibit 8.)

24

Scheurich continually made derisive comments about Hester to other employees and mocked his disciplinary and counseling efforts, despite his express request and directive not to even mention the counseling. Direct insubordination when Hester requested confirmation of the security password for the computer system Scheurich controlled was the basis for another "Performance Improvement Counseling" session instituted and conducted by Rosler. That session also addressed the threats Scheurich had made to disrupt the computer system and her threats to take legal action. Furthermore, reports from people other than Hester indicated Scheurich's disruptive behavior among co-workers.

The court is not satisfied that the several types and instances of misconduct for which Scheurich was disciplined are roughly equivalent to the alleged instances of misconduct of Rodriguez and Gray. Specifically, the court finds Scheurich's behavior distinct in that she was unrelentingly disruptive. As the disciplinary reports reflect, Scheurich was not disciplined for a single incident *per se*. Thus, considering the context in which Scheurich's behavior was addressed, including her resistance and vitriolic responses to these efforts, the court finds that Scheurich was not "similarly situated in all relevant respects" to Rodriguez or Gray. *Jones*, 137 F.3d at 1311. Accordingly,

25

Scheurich has not met her burden of establishing a prima facie case, rendering this claim ripe for summary judgment.

## C. Harassment Because of Sex

The court also addresses Scheurich's argument as asserting a claim for sexual harassment.

The Supreme Court instructs that Title VII is violated, and sexual harassment is actionable, whenever the workplace is permeated with "discriminatory intimidation, ridicule, and insult," *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986), that is "sufficiently severe or pervasive 'to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* at 67, 106 S.Ct. at 2405 (quoting *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982)). The harassment need not be motivated by sexual desire; provided, however, that it is "because of sex." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 118 S.Ct. 998, 1002, 140 L.Ed.2d 201 (1998) ("The critical issue ... is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed. ... [H]arassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex.") (internal citations and quotation marks omitted).

26

Any claim of harassment Scheurich may present follows that line of cases which courts have analyzed under the rubric of "hostile work environment" harassment.

## 1. Elements of prima facie case of hostile work environment sexual harassment

There are five elements of a prima facie case of hostile work environment sexual harassment: i.e., (1) the employee belongs to a protected group; (2) the employee was subjected to unwelcome sexual harassment; (3) the harassment complained of was based upon the employee's sex[9]; (4) the harassment complained of affected a term, condition, or privilege of employment, in that it was sufficiently severe or pervasive as to alter the conditions of employment and created an abusive working environment; and (5) there must be a basis for holding the employer liable for the harassment either directly or indirectly. *See Mendoza v. Borden, Inc.*, 158 F.3d 1171, 1175 (11th Cir. 1998) (citing *Henson v. City of Dundee*, 682 F.2d 897, 903-05 (11th Cir. 1982)). Whether an employee can satisfy her burden of showing that the work environment is hostile or abusive is a fact-specific question, requiring analysis of all the circumstances. *See id.*

---

[9] "In proving a claim for a hostile work environment due to sexual harassment, ... the plaintiff must show that but for the fact of her sex, she would not have been the object of harassment. ..." Henson v. City of Dundee, 682 F.2d 897, 904 (11th Cir. 1982) (citations omitted).

27

The court first must determine whether Scheurich satisfies her burden of establishing a prima facie case and, specifically, of showing that she was harassed because of her sex. Scheurich lists, in addition to the disputes involving Rodriguez and Gray, other alleged "Instances of Discrimination."

> Whereas a short time prior to Hester becoming her supervisor, plaintiff had been promoted .... Hester repeatedly found fault with what she was doing. Thereafter, even before he had an opportunity to become familiar with her job performance, [1] Hester announced that he would bring in a consultant to review plaintiff's work. He did not do this with male professionals in the group who had responsibilities similar to plaintiff. ... [2] Hester also removed some of her job responsibilities, and assigned them to a consultant. [3] Additionally, he prohibited her dealing with subcontractors and vendors, but did not do this with any of his male professionals. [4] Plaintiff was also required to make a log of her day to day activities and justify every action that she took.

(Plaintiff's brief at 9.) The court finds the list in the brief supplemented by Scheurich's affidavit. Specifically, the reference to job responsibilities in the second item above refers to the maintenance of the Time and Attendance System. (See Scheurich affidavit, p. 2.) With regard to the third item, Scheurich attests that Hester explained his decision by saying that she was not a project manager. Scheurich responded that she had just been promoted from that position, but to no avail. (See id.) Scheurich also contends that Hester asked her for the password to the

28

database system, but never asked for the password to two specific systems which were controlled by males. (See id., at p. 3.)

In typical sexual harassment actions, courts find inferences of harassment because of sex easier to draw than in an action such as this one, where the alleged harassment is not motivated by sexual desire.[10]  Although troubled by Scheurich's general assertions regarding the treatment of similarly situated male employees, the court notes that the Hospital does not dispute the allegations.  Thus, the court finds Scheurich has established a prima facie case.

Even though the Hospital does not dispute the occurrence of the acts Scheurich alleges (other than the incidents involving Rodriguez and Gray), the Hospital does take issue with the alleged motivation of its actions.  Quite simply, the Hospital argues that

---

[10]  The Eleventh Circuit discussed the typical analysis in Llampallas v. Mini-Circuits, Lab, Inc., 163 F.3d 1236, 1246 (11th Cir. 1998):

[T]he act of sexual harassment itself creates an inference that the harasser harbors a sexually discriminatory animus towards the plaintiff.  When a person "sexually harasses" another, i.e., makes comments or advances of an erotic or sexual nature, we infer that "the harasser [is making] advances towards the victim because the victim is a member of the gender the harasser prefers." Fredette v. BVP Management Assocs., 112 F.3d 1503, 1505 (11th Cir. 1997), cert. denied, --- U.S. ----, 118 S.Ct. 1184, -140 L.Ed.2d -315- (1998).  Unless there is evidence to the contrary, therefore, we also infer that the harasser treats members of the "non-preferred" gender differently—and thus that the harasser harbors an impermissible discriminatory animus towards persons of the preferred gender.  See Henson v. City of Dundee, 682 F.2d 897, 904 (11th Cir. 1982) ("In the typical case in which a male supervisor makes sexual overtures to a female worker, it is obvious that the supervisor did not treat male employees in a similar fashion.").  This inference can be drawn regardless of the sexual orientation of the harasser, so long as the harassed victim is of the harasser's "preferred" gender.

29

these actions were taken in response to Scheurich's behavior,
including her well-documented disruptive, insubordinate, and
threatening conduct. Moreover, Scheurich contends that she had
problems only with Hester. Nevertheless, many of the actions and
other disciplinary measures that Scheurich cites as harassment were
either approved, designed, or actually taken by Andrea Rosler, the
Hospital's Vice President of Human Resources. The incident
involving Hester's request for the password to the database was
prompted by the suggestion of Hester's manager, Larry Walls, out of
concern over threats Scheurich had made. The Hospital, therefore,
has    satisfied    its    burden    of    articulating    legitimate,
nondiscriminatory reasons for its actions. *See Corbin v. Southland
International Trucks*, 25 F.3d 1545, 1550 (11th Cir. 1994); *see also
Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 (4th Cir. 1989)
(finding legitimate, nondiscriminatory reasons for discharge to
include "her insubordinate attitude [and] her difficulty in working
with fellow employees"); *Chalk v. Secretary of Labor*, 565 F.2d 764,
768 (D.C. Cir. 1977) ("[S]everal courts have held that a decision
to fire or not to hire a person because of his or her disruptive or
uncooperative conduct is proper.") (collecting cases).

The burden thus shifts to Scheurich to cast doubt upon the
reasons the Hospital offered for its actions. Scheurich relies
upon the arguments and evidence identified above. She does not

30

address the reasons the Hospital cites for its actions.  Moreover,
Scheurich disputes the motivation of only Hester; she apparently
has no problem with Rosler's involvement or Rosler's actions.[11]
Rosler investigated Scheurich's allegations and found no credible
evidence of discrimination because of sex, and the EEOC
investigator would later concur.  Now, this court finds plaintiff's
general allegations of harassment by Hester insufficient to create
a genuine issue of material fact as to whether the Hospital
intended to discriminate against her because of her sex.  *See*
*Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1332 (11th Cir.
1998) (finding failure to show pretext where plaintiff did not
dispute the validity or the basis for certain disciplinary
actions); *Grigsby v. Reynolds Metals Company*, 821 F.2d 590, 597
(11th Cir. 1987) ("Where the defendant's justification evidence
completely overcomes any inference to be drawn from the evidence
submitted by the plaintiff, the district court may properly

---

[11] The only reference plaintiff makes to discrimination possibly
perpetrated by someone other than Hester is the general assertion regarding
retaliation, which is found in the introduction of her brief:  "Plaintiff's
second charge of discrimination alleged that she had been criticized, berated and
micro-managed in retaliation for my having filed her initial charge of
discrimination.  Plaintiff also alleges that she was told that if she complained
anymore about sex discrimination, she would be discharged."  (Plaintiff's brief
at 2.)

The following question and answer is excerpted from Scheurich's deposition:

Q:  Do you think Ms. Rosler was genuine in her efforts to try to cool
    things down?

A:  I believe that with all my heart, yes.

(Plaintiff's deposition, at 114.)

31

acknowledge that fact and award summary judgment to the employer."); *see also Early v. Champion International Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990) ("Mere conclusory allegations and assertions will not suffice.") (collecting cases).

## C.  Title VII Retaliation Claims

Section 704(a) of Title VII, now codified at 42 U.S.C. § 2000e-3(a), provides protection to those employees who oppose or participate in activities to correct an employer's discriminatory practices:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because [the employee] has opposed any practice made an unlawful employment practice by this [title], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this [title].

42 U.S.C. § 2000e-3(a). Congress thus recognized two bases for a claim of retaliation: one for opposition to discriminatory practices ("because [the employee] has opposed any practice made an unlawful employment practice by this [title]"); and, another for participation in protected activity ("because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this [title]"). The participation clause of § 2000e-3(a) has been broadly construed.

32

It covers all aspects of the process of communicating (or
refusing to communicate) allegations or evidence to a
civil rights enforcement agency. The filing of a formal
"charge," as defined in § 706 [42 U.S.C. § 2000e-5],
plainly is protected, and protection also has been held
to extend to an unsworn letter protesting the EEOC's
dismissal of a charge, and the expression of an intent to
file a charge. Courts have interpreted "assist[ing]" and
"participat[ing]" to cover the private gathering of non-
confidential information for the investigating agency's
use in addressing the charge, being a probable witness
for a plaintiff, testifying for a co-worker, assisting
fellow workers in their discrimination claims, assisting
relatives in their discrimination claims, and refusing to
be a cooperative witness for an employer. Courts extend
derivative protection to those who suffer adverse action
because their employer mistakenly believes that they have
filed a charge, or because they are related to, or allied
with, someone who has engaged in protected participation
or opposition.

I Barbara Lindemann & Paul Grossman, *Employment Discrimination Law*

651-52 (3d ed. 1996) (footnotes omitted). On the other hand,

Courts disagree on the scope of protection afforded
by the opposition clause. The three most controverted
areas involve: (1) the meaning of the requirement that
the practice opposed be "made an unlawful employment
practice by [Title VII]"; (2) when broad or ambiguous
complaints will be interpreted as "opposition"; and (3)
when otherwise protected "opposition" loses its
protection because of the form or manner in which the
opposition is made.

*Id.* at 655 (3d ed. 1996) (footnote omitted).

### 1. Elements of prima facie Title VII retaliation claim

To establish a prima facie case of retaliation for conduct

falling under either the opposition or participation clause of 42

U.S.C. § 2000e-3(a), a plaintiff must show (1) that she engaged in

33

statutorily protected expression or activity, (2) she suffered an adverse employment action, and (3) the adverse action was causally related to the protected expression or activity.   *See, e.g., Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1455 (11th Cir. 1998); *Meeks v. Computer Associates International*, 15 F.3d 1013, 1021 (11th Cir. 1994); *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993).

### a.   Requirement of "good faith, reasonable basis" in cases under the opposition clause

When a retaliation claim is based upon conduct falling under the opposition clause of 42 U.S.C. § 2000e-3(a), the plaintiff also must demonstrate a good faith, reasonable basis for believing that the underlying, allegedly discriminatory practices which she opposed constituted a violation of Title VII, as distinguished from proving that the employer actually engaged in an unlawful employment practice.  *See, e.g., Wu v. Thomas*, 863 F.2d 1543, 1549 (11th Cir. 1989) ("[P]laintiff need only have had a 'reasonable belief' that an unlawful employment practice was occurring.")  This additional element of a prima facie case for a retaliation claim under the opposition clause has two components, as the Eleventh Circuit observed in *Little v. United Technologies*, 103 F.3d 956 (11th Cir. 1997):

> We previously have recognized that a plaintiff can establish a prima facie case of retaliation under the

34

opposition clause of Title VII if he had a good faith,
reasonable belief that the employer was engaged in
unlawful employment practices. *See Rollins v. State of
Fla. Dept. of Law Enforcement,* 868 F.2d 397, 400 (11th
Cir. 1989). It is critical to emphasize that a
plaintiff's burden under this standard has both a
subjective and an objective component. A plaintiff must
not only show that he subjectively (that is, in good
faith) believed that his employer was engaged in unlawful
employment practices, but also that his belief was
objectively reasonable in light of the facts and records
presented. It thus is not enough for a plaintiff to
allege that his belief in this regard was honest and bona
fide; the allegations and record must also indicate that
the belief, though perhaps mistaken, was objectively
reasonable.

A plaintiff, therefore, need not prove the
underlying discriminatory conduct that he opposed was
actually unlawful in order to establish a prima facie
case and overcome a motion for summary judgment; such a
requirement "[w]ould not only chill the legitimate
assertion of employee rights under Title VII but would
tend to force employees to file formal charges rather
than seek conciliation of informal adjustment of
grievances." *Sias v. City Demonstration Agency,* 588 F.2d
692, 695 (9th Cir. 1978). *See also Payne v. McLemore's
Wholesale & Retail Stores,* 654 F.2d 1130, 1140 (5th Cir.
Unit A Sept. 1981) ("To effectuate the policies of Title
VII and to avoid the chilling effect that would otherwise
arise, we are compelled to conclude that a plaintiff can
establish a prima facie case of retaliatory discharge
under the opposition clause of [Title VII] if he shows
that he had a reasonable belief that the employer was
engaged in unlawful employment practices."), *cert.
denied,* 455 U.S. 1000, 102 S.Ct. 1630, 71 L.Ed.2d 866
(1982).

*Little v. United Technologies,* 103 F.3d at 960 (emphasis in

original) (footnote omitted); *see also, e.g., Meeks v. Computer

Associates International,* 15 F.3d 1013, 1021 (11th Cir. 1994); EEOC

v. White & Sons Enterprises, 881 F.2d 1006, 1012 n.5 (11th Cir.

35

1989); *Tipton v. Canadian Imperial Bank of Commerce*, 872 F.2d 1491,

1494 (11th Cir. 1989); *Silver v. KCA, Inc.*, 586 F.2d 138 (9th Cir.

1978); I Barbara Lindemann & Paul Grossman, *Employment*

*Discrimination Law* 656-57 (3d ed. 1996) ("The rationale is that

appropriate opposition should not be chilled by fear of retaliation

— even if, as a matter of fact or law, there is no violation.")

(footnote omitted)

> (i) **Eleventh Circuit has not decided whether "good
> faith, reasonable basis" requirement applies
> to cases under the participation clause**

The Eleventh Circuit refused to decide whether protection from

retaliation under the participation clause also is conditioned by

a good faith, reasonable basis requirement in *Wideman v. Wal-Mart*

*Stores, Inc.*, 141 F.3d 1453, 1455 (11th Cir. 1998). In that case,

the parties disagree[d] over whether a plaintiff who
alleges she was retaliated against for filing an EEOC
charge of discrimination must also establish, as part of
her prima facie case, that she had a good faith,
reasonable basis for filing the charge. Wideman argues
that a plaintiff who alleges she suffered retaliation for
filing an EEOC charge is pursuing her claim under the
participation clause of 42 U.S.C. § 2000e-3(a), and that
protection from retaliation under the participation
clause is not conditioned by a good faith, reasonable
basis requirement. Wal-Mart, on the other hand, notes
that we have held that retaliation claims brought under
the opposition clause of 42 U.S.C. § 2000e-3(a) are
conditioned by a good faith, reasonable basis
requirement, *see, e.g., Little v. United Technologies,*
103 F.3d 956, 959-60 (11th Cir. 1997), and argues that we
should not distinguish retaliation claims brought under
the participation clause from those under the opposition
clause. The district court agreed with Wal-Mart, holding

36

that Wideman did not establish a prima facie case of
retaliation because her EEOC charge of discrimination was
not "objectively reasonable."

Because we conclude that the facts of this case,
viewed in the light most favorable to Wideman, show that
Wideman had a good faith, reasonable basis for filing her
charge, [12] <u>we need not decide whether protection from
retaliation under the participation clause is conditioned
by a good faith, reasonable basis requirement</u>. ...

*Wideman*, 141 F.3d at 1454-55 (emphasis supplied).

This court nevertheless opines that, when the Eleventh Circuit

does address the issue squarely, it likely will decide there is no

"good-faith, reasonable basis" requirement attendant to retaliation

claims under the participation clause of § 2000e-3(a).   A

comparison of the clauses strongly suggests that result, as one

treatise has observed:

Unlike the opposition clause, the participation
clause contains no qualifying language stating that the
practice opposed must be one "made an unlawful employment
practice by this [title]."  Thus, protection under the
participation clause is not lost if the employee is wrong
on the merits of the charge, even if the contents of the
charge are malicious and defamatory as well as wrong.

I Barbara Lindemann & Paul Grossman, *Employment Discrimination Law*

655 (3d ed. 1996) (footnotes omitted).

---

[12] Wideman testified she filed an EEOC charge because, among other reasons,
she had been told by a supervisor that the "craft instructor" position Wideman
had applied to fill would not be awarded "to anybody black."

Wal-Mart's counsel conceded at oral argument that Wideman
would have a good faith reasonable basis for her charge if Wideman
had testified that she filed the discrimination charge because
Dellinger told her she would not give the position to anybody black.
As we have pointed out, Wideman did testify to that.

*Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1455 n.1 (11th Cir. 1998).

37

Further support for resolving this issue in favor of a broad
construction of the participation clause is found in analogous
Eleventh Circuit precedent. In a seminal case, *Pettway v. American
Cast Iron Pipe Company*, 411 F.2d 998 (5th Cir. 1969),[13] the former
Fifth Circuit spoke to the issue of the breadth of protection
afforded an employee by the participation clause. The court
properly acknowledged that *Pettway* involved what was then "a unique
question arising under Title VII of the 1964 Civil Rights Act."
411 F.2d at 999. The court then framed the issue as "whether a
charge filed pursuant to § 704(a) of the Act (42 U.S.C.A. § 2000e-
3(a)) prohibits an employer from discharging an employee for having
made false statements in a request for reconsideration of his case
before the Equal Employment Opportunity Commission claiming racial
discrimination ...." *Id.* at 999-1000.

Although the court did not specifically address whether the
"participation"[14] of an employee is conditioned by a good faith,
reasonable basis requirement, the court did not impose such a

_____

[13] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en
banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit
decisions handed down prior to the close of business on September 30, 1981.

[14] Defining the protection of the participation clause, the court in
*Pettway* included any charge, petition for reconsideration, or other communication
with the EEOC sufficient for EEOC purposes, or in a proceeding before the EEOC.
The court noted that the requirements for a charge are liberal. *See* 411 F.2d at
1007.

The scope of the participation clause, however, is limited to
"participation in the machinery set up by Title VII to enforce its provisions."
*Clover v. Total Systems Services, Inc.*, 157 F.3d 824, 829 (11th Cir. 1998)
(quoting *Silver v. KCA, Inc.*, 586 F.2d 138, 141 (9th Cir. 1978); accord, *Booker
v. Brown & Williamson Tobacco, Inc.*, 879 F.2d 1304, 1313 (6th Cir. 1989).

38

requirement.   Rather, *Pettway* held that neither may an employer determine the correctness or consequences of an employee's charge of   discrimination,   nor   may   a   court   sustain   an   employer's disciplinary action or deny relief because the employee included malicious   material   in   the   charge.      In   other   words,   the participation clause "prohibits an employer from discharging an employee for having made false, and apparently malicious, statements in a writing purporting to be, and to be used as, a charge filed with the EEOC, if the charge or other writing is sufficient for EEOC purposes."   Philip H. Myers, Annotation, *Construction and Application of § 704(a) of Civil Rights Act of 1964 (42 U.S.C.A. § 2000e-3(a)), Making It Unlawful Employment Practice to Discriminate Against Individual for Participation in Equal Employment Opportunity Proceedings or Activities*, 11 A.L.R. Fed. 316 (1972).

   More recently, in *Merritt v. Dillard Paper Company*, 120 F.3d 1181 (11th Cir. 1997), the Eleventh Circuit reversed the district court's finding that <u>involuntary participation</u>[15] took the plaintiff outside the statutory language of the participation clause. Discussing the breadth of the participation clause, the court said:

> The anti-retaliation provision is straightforward and
> expansively written.   Congress chose the language

---

[15] Plaintiff was forced to testify in a Title VII action brought against the employer by a third party employee.  Plaintiff was the alleged harasser in that case, and he supported the employer and desired to defeat the Title VII claim.

39

"testified" and "participated in any manner" to express
its intent about the activity to be protected against
retaliation.  The word "testified" is not preceded or
followed by any restrictive language that limits its
reach.  As to "participated in any manner," the adjective
"any" is not ambiguous; it has a well-established
meaning.  Earlier this year, the Supreme Court explained,
"Read naturally, the word 'any' has an expansive meaning,
that is, 'one or some indiscriminately of whatever
kind.'"  United States v. Gonzales, 520 U.S. 1, 117 S.Ct.
1032, 1035, 137 L.Ed.2d 132 (1997) (citation omitted).
Here, as in Gonzales, "Congress did not add any language
limiting the breadth of that word," so "any" means all.

Merritt, 120 F.3d at 1186.  More specifically, the court added,

"[w]e cannot add to the terms of Title VII's anti-retaliation

provision what Congress left out: the requirement of a good

motive, a pure heart, a happy face."  Id. at 1187 (emphasis

supplied).

These opinions notwithstanding, when refusing to address the

issue of a good faith, reasonable basis requirement for the

participation clause, the Wideman court side-stepped an issue that

has created an apparent split in Eleventh Circuit precedent.[16]  The

cases diverging from that line emerging from Pettway stem from a

subsequent opinion of the former Fifth Circuit, Payne v. McLemore's

Wholesale & Retail, 654 F.2d 1130 (5th Cir. 1981).  This line

_____

[16] The analysis that follows suggests there may not be a split in Eleventh
Circuit precedent, but only confusion among the district courts.  That
determination turns on how narrowly one reads the holding in Wu v. Thomas, 863
F.2d 1543 (11th Cir. 1989), discussed infra.  Nevertheless, if such a split in
fact exists, the Eleventh Circuit is bound by the earliest panel's decision:
that is, the decision in Pettway which, while not inconsistent with any Supreme
Court precedent, does not apply the reasonable basis requirement to claims under
the participation clause.  See Walker v. Mortham, 158 F.3d 1177, 1188 (11th Cir.
1998).

40

deviates from the path marked by *Pettway*, because the courts either have failed to distinguish claims under the opposition clause from those under the participation clause, or have relied upon cases that fail to make this distinction.[17]

*Payne* itself involved conduct falling under the opposition clause. In *Payne*, the plaintiff alleged that the defendant did not recall or rehire him because of his involvement in picketing one of the defendant's stores. In previous years, plaintiff had been laid off due to the seasonal nature of defendant's business, but always had been rehired. Plaintiff was not rehired after the layoff during which he and others picketed defendant's store, protesting alleged discriminatory employment practices of that store. Specifically, plaintiff protested the alleged refusal to hire blacks into "money-handling and supervisory positions." 654 F.2d at 1134-35. After he was not recalled by defendant, plaintiff brought suit, alleging retaliation against him for "his civil rights activity," in violation of Title VII. *Id.* at 1135. The *Payne* court properly addressed the case as one under the opposition clause, holding:

---

[17] Lending to the confusion, courts in other circuits sometimes fail to distinguish between the two clauses of 42 U.S.C. § 2000e-3(a) when addressing claims under the opposition clause. The courts speak in broad terms, discussing the requirement that a plaintiff must have a reasonable, good faith belief that the employer's actions which the plaintiff opposed were unlawful. *See*, *e.g.*, *Manoharan v. Columbia University College of Physicians and Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988).

41

> To effectuate the policies of Title VII and to avoid
> the chilling effect that would otherwise arise, we are
> compelled to conclude that a plaintiff can establish a
> prima facie case of retaliatory discharge under the
> opposition clause of section 704(a) if he shows he had a
> reasonable belief that the employer was engaged in
> unlawful employment practices.

654 F.2d at 1140 (emphasis supplied). In fact, the *Payne* court

expressly distinguished that action from those under the

participation clause, and in such a manner as to suggest that a

good faith reasonable basis requirement should not apply to claims

under the participation clause:

> [T]he opposition clause "serves a more limited
> purpose" than does the participation clause. ... However,
> interpreting the opposition clause to require proof of an
> unlawful employment practice[, an argument the court
> rejected in favor of the narrower good faith, reasonable
> basis requirement,] would "chill the legitimate assertion
> of employee rights under Title VII," ... just as surely
> as would interpreting the participation clause to require
> a truthful charge.

*Id.* at 1139 (emphasis supplied) (citations to *Sias v. City*

*Demonstration Agency*, 588 F.2d 692, 695 (9th Cir. 1978) omitted).

Nevertheless, the failure of other courts and other panels to

distinguish between the two anti-retaliation clauses has engendered

confusion. Courts imposing the reasonable basis requirement upon

claims under the participation clause cite, in addition to *Payne*,

four Eleventh Circuit opinions, each of which fails to distinguish

the opposition clause from the participation clause: *i.e.*, *Meeks*

*v. Computer Associates International*, 15 F.3d 1013 (11th Cir.

42

1994); *Tipton v. Canadian Imperial Bank of Commerce*, 872 F.2d 1491
(11th Cir. 1989); *Rollins v. Florida Department of Law Enforcement*,
868 F.2d 397 (11th Cir. 1989); *Wu v. Thomas*, 863 F.2d 1543 (11th
Cir. 1989).  The first three of those four cases involved conduct
covered by the opposition clause, not by the participation clause.[18]
Indeed, only *Wu v. Thomas* involved conduct falling under the
participation clause.

---

[18] The plaintiff in *Meeks* believed that she was paid less than her male
colleagues because of her sex, and she complained to her supervisor.  "Meeks
alleged a pattern of harassment that constituted constructive discharge in
retaliation for complaining about the disparities in the technical writer's
salaries."  15 F.3d at 1015.

The conduct at issue in *Tipton* was the plaintiff's repeated challenges to
decisions of her supervisor, only one of which involved conduct allegedly
protected under 42 U.S.C. § 2000e-3(a).  In essence, in one discussion with her
supervisor, plaintiff "stated that she believed [the supervisor] was
discriminating against her, and she informed [him] that she had the right to take
legal action to oppose the alleged discrimination."  872 F.2d at 1494.  In
affirming the district court, the Eleventh Circuit repeated that court's
findings:  "In the final analysis, the district court found that Tipton was
discharged because of her blatant challenges to [the supervisor's] authority and
her refusal to accept his decisions, not because she made one reference to sex
discrimination two days before her termination."  *Id.* at 1495 (emphasis
supplied).

In *Rollins* the Eleventh Circuit affirmed the judgment for defendant,
entered following a trial before the district court sitting without a jury.  The
district court based its holding on the defendant's legitimate, nondiscriminatory
reason for denying plaintiff (Rollins) promotion:  that is, "that the denial of
promotion was based on the manner in which Rollins complained of discrimination,
not on the fact that she complained."  868 F.2d at 399.  Although Rollins had
previously filed charges of discrimination with the EEOC and the equivalent body
under Florida law (both of which had been found baseless), this conduct was not
at issue in the case.  Rather, the Eleventh Circuit focused on three examples of
plaintiff's conduct, from a record "replete with a variety of incidents which
support the district court's determinations":  (1) "Rollins habitually bypassed
the chain of command [in] bringing her complaints of discriminatory employment
practices"; (2) "the sheer number and frequency of Rollins' complaints"; and (3)
"Rollins frequently expressed her complaints in an insubordinate and antagonistic
manner."  *Id.*

*Wu v. Thomas*, discussed *infra*, involved a prior legal action alleging a
violation of Title VII.  *See* 863 F.2d at 1549.

43

Actually, there were two *Wu* decisions relevant to this discussion,[19] with one preceding the decision mentioned above. In the first action, Kathleen Wu brought suit against the University of Alabama and several of its officials alleging she had been denied promotion to full professor and the pay attendant to that status because of her gender, in violation of the Equal Pay Act, Title VII, and § 1983. The district court entered judgment in favor of defendants, and the Eleventh Circuit affirmed. *Wu v. Thomas*, 847 F.2d 1480 (11th Cir. 1988) ("*Wu I*").

The second *Wu* action was brought by both Kathleen Wu and her husband, Dr. Hsiu Kwang (H.K.) Wu, a full professor and former chairman of the university's Department of Finance and Economics. Both Wus asserted that adverse employment actions taken against Dr. H.K. Wu — i.e., summarily removing him from the chairmanship of his department and then "invit[ing him] to look for work elsewhere" — were in retaliation for the EEOC charge and first suit that Ms. Wu had prosecuted against the university. *Wu v. Thomas*, 863 F.2d 1543, 1545 (11th Cir. 1989) ("*Wu II*").

> The University retaliated against me [Kathleen Wu] by ... calling my husband and suggesting that he would be happier teaching somewhere else. This was retaliation against me because (1) I have a discrimination suit pending against the University [*Wu I*]; (2) the University knows that if my husband took another job in a different

[19] A third opinion involving these parties can be found at 996 F.2d 271, where the Eleventh Circuit addresses an appeal after the remand pursuant to *Wu II* (discussed above). This third opinion does not bear upon the issue at bar.

44

> city I would be likely to follow him because of our
> marital relationship.

Wu II, 863 F.2d at 1547 (emphasis supplied). Obviously, at least
as to Ms. Wu, the retaliation claim asserted in Wu II fell under
the participation clause of § 2000e-3(a). The Eleventh Circuit's
opinion in Wu II did not make such a nice distinction, however, but
merely reversed the district court's dismissal of the second
action, finding that plaintiffs had stated a valid cause of action.
Concededly, in so doing the court spoke expansively when saying
that § 2000e-3(a) "does not require" that a plaintiff alleging a
retaliation claim prove "that the employer actually have been
engaged in an unlawful employment practice; rather, the plaintiff
need only have had a 'reasonable belief' that an unlawful
employment practice was occurring." 863 F.2d at 1549. The court
cited only Payne for this proposition. Id. Nevertheless, the
court found the plaintiff had such a reasonable belief and allowed
the action to proceed. Id.

Although no panel of the Eleventh Circuit has imposed the
"good faith, reasonable basis" requirement to deny a plaintiff
relief under the participation clause, the panel in Wu II allowed
a claim falling under that clause to proceed because the plaintiff
possessed a reasonable belief that the defendant's prior acts
violated Title VII.

45

Not surprisingly, therefore, these circuit decisions have engendered confusion among the district courts, leading some to impose a "good faith, reasonable basis" burden on plaintiffs seeking redress under the participation clause of § 2000e-3(a). One example is *United States v. City of Montgomery*, 744 F. Supp. 1074 (M.D. Ala. 1989).

*City of Montgomery*. involved. conduct covered by the participation clause. The opinion arose from continuing, consolidated actions, and addressed motions by "two classes of plaintiff-intervenors on behalf of ... four [police] officers" to make the court's prior preliminary injunction permanent. *Id.* at 1077. The court had enjoined the defendants from filling the position of "deputy chief designate" with a white male officer instead of one of the four officers of African-American heritage who were similarly situated with that white officer. *Id.* Beginning its analysis, the court said that "the intervenors have shown that each of the four officers has engaged in statutorily protected activity by participating in some manner in these two Title VII cases." *Id.* at 1079. Ultimately, the court granted the motion, making the injunction permanent. *Id.* at 1088. Although the district court did not hinder the plaintiff-intervenors who sought redress under the participation clause with a reasonable

46

basis requirement, the court nevertheless called attention to such a requirement in a footnote.

> A plaintiff's discrimination suit need not be meritorious to support a subsequent claim of retaliation under § 2000e-3(a). The essence of a retaliation claim under Title VII is that the plaintiff is being punished for participating in any significant way in a suit challenging the employer's practices, regardless of the ultimate success of that endeavor. *See, e.g., Wu v. Thomas*, 863 F.2d 1543, 1549 (11th Cir. 1989). A plaintiff need only have had a reasonable belief that the defendants had committed an unlawful employment practice under Title VII to come within the coverage of § 2000e-3(a). *Id.*

*City of Montgomery*, 744 F. Supp. at 1080 n.10. Note well that the district court cited only *Wu II* in support of imposing this burden on plaintiff. Given the favorable outcome for the plaintiff, however, any error with regard to plaintiff's burden would have been harmless. The district court was affirmed by the Eleventh Circuit without discussion in *United States v. City of Montgomery*, 911 F.2d 741 (11th Cir. 1990) (Table, No. 89-7723).

More recently, in *Amos v. Housing Authority*, 927 F. Supp. 416, 422 (N.D. Ala. 1996), a court in this district applied a good faith reasonable basis requirement despite the fact that plaintiff's conduct fell under the participation clause, and entered judgment against the plaintiff as a result. Plaintiff alleged "she was a victim of retaliation in the form of a discharge in reaction to her having filed a charge with the EEOC." 927 F. Supp at 418. It is

47

respectfully submitted that the *Amos* court misconstrued the cases it relied upon. First, the court quoted *Pettway*: "In *Pettway* it was 'not all clear that the [trial] court found the [employee's] letter [to the EEOC] motivated by malice.'" *Id.* at 421 (quoting *Pettway*, 411 F.2d at 1006). The *Amos* court then leaped to the conclusion that "[i]mplied in [that] language is an emerging limitation on retaliation claims, namely, if the employee's initial charge of discrimination was so ridiculous as to imply malice, or, in other words, was itself an act of retaliation, it is not protected by the anti-retaliation provisions." *Id.* This reading of *Pettway* disregards the former Fifth Circuit's discussion of the breadth of the anti-retaliation provision of Title VII, *see Pettway*, 411 F.2d at 1005-06, and that court's explicit holding that it could not "deny relief [under Title VII] because of the presence of such malicious material." 411 F.2d at 1007.

Furthermore, the *Amos* court relies upon *Payne*. The court quotes from *Payne* and follows by declaring (incorrectly) that "*Payne* stands flatly for the proposition that as a part of Amos's prima facie case she must show that she reasonably believed she was the victim of age discrimination."[20] The *Amos* court ignores the distinction that *Payne* involved conduct falling under the

---

[20] *Amos* involved a claim based upon the Age Discrimination in Employment Act, which has an anti-retaliation clause analogous to Title VII's and is analyzed in the same manner. *See Amos*, 927 F. Supp. at 421.

48

opposition clause, whereas *Amos* involved conduct covered by the participation clause. Similarly, the *Amos* court cites *Rollins* and *Meeks*, which are discussed above,[21] and which impose or discuss a good faith, reasonable basis requirement for claims under the opposition clause.

The Courts of Appeal and district courts in other circuits lend support to the reading of the anti-retaliation clauses of 42 U.S.C. § 2000e-3(a) which this court advocates above: that is, that the participation clause is intended to provide broader protection for the more limited conduct embraced by that clause.[22] Most, if not all of the courts outside this circuit make that distinction between the clauses, at least when addressing claims

---

[21] *See* footnote 18 *supra*, and accompanying text.

[22] *See* Wyatt v. City of Boston, 35 F.3d 13, 15 (1st Cir. 1994) ("As for the participation clause, there is nothing in its wording requiring that the charges be valid, nor even a requirement that they be reasonable.") (internal quotation marks and citation omitted) (emphasis supplied); Booker v. Brown & Williamson Tobacco Co., 879 F.2d 1304, 1312 (6th Cir. 1989) (citing *Pettway* and noting breadth of participation clause, and that "[p]rotection is not lost if the employee is wrong on the merits of the charge, ... nor is protection lost if the contents of the charge are malicious and defamatory ....") (citations omitted); Sias v. City Demonstration Agency, 588 F.2d 692, 695 (9th Cir. 1978) ("It is well settled that the participation clause shields an employee from retaliation regardless of the merit of his EEOC charge.") (citing *Pettway*, 411 F.2d 998 (5th Cir. 1969)); Jeffries v. Kansas, 147 F.3d 1220, 1231 (10th Cir. 1998); Parker v. Baltimore and Ohio Railroad Company, 652 F.2d 1012, 1019 (D.C. Cir. 1981) ("The participation clause speaks in clear, absolute terms, and has accordingly been interpreted as shielding recourse to the EEOC, regardless of the ultimate resolution of the underlying claim on its merits.") (citing *Pettway*, 411 F.2d 998 (5th Cir. 1969)); Blizzard v. Newport News Redevelopment and Housing Authority, 670 F. Supp. 1337, 1344 (E.D. Va. 1984) ("Unlike the opposition clause, the participation clause ... grants an absolute privilege for filing a claim with the EEOC[, and] [t]here is no requirement in the statute that the discrimination claim be meritorious, and the courts have not imposed such a limitation.") (emphasis supplied); Wolf v. J.I. Case Company, 617 F. Supp. 858, 868 (E.D. Wis. 1985).

49

under the participation clause. Therefore, these courts provide strongly persuasive authority encouraging the Eleventh Circuit to maintain and clarify this position, or to adopt this position of refusing to impose a good faith, reasonable basis requirement on plaintiffs alleging claims under the participation clause.

Sheilah Scheurich alleges claims for retaliation based on conduct falling under both clauses of 42 U.S.C. § 2000e-3(a). The court will address these claims separately, beginning with the claim under the opposition clause.

## 2. Claim under the opposition clause

It is undisputed that Scheurich repeatedly voiced complaints about what she perceived to be unlawful sex discrimination. This is protected expression satisfying the first element of plaintiff's prima facie case. Furthermore, given the several disciplinary measures the Hospital took and the fact that the Hospital relieved her of certain responsibilities, the court finds that a reasonable person in Scheurich's position <u>could</u> view these employment actions as adverse. *See Doe v. Dekalb County School District*, 145 F.3d 1441, 1449 (11th Cir. 1998) (announcing an objective standard for determining whether a plaintiff has suffered an adverse employment action). Therefore, Scheurich has established — for purposes of her prima facie case — that she suffered an adverse employment action. *See id.; see also Wideman v. Wal-Mart Stores, Inc.*, 141

50

F.3d 1453, 1456 (11th Cir. 1998) ("Title VII's protection against
retaliatory discrimination extends to adverse actions which fall
short of ultimate employment decisions.")  Next, Scheurich must
show a causal relation between her opposition and an adverse
employment action.   Although what the court has considered as
adverse employment actions appear to have triggered the vocal
opposition rather than the reverse, there were numerous instances
of both adverse actions and opposition.   Given the temporal
proximity of these actions and the difficulty of accurately
determining  their  interrelation,  the  court  will  entertain
plaintiff's prima facie case one step further.   *See generally*
*Holland v. Jefferson National Life Insurance Co.*, 883 F.2d 1307,
1314-15 (7th Cir. 1989) (for purposes of establishing a prima facie
case, the "telling" temporal sequence of events — plaintiff's
complaint  followed  shortly  by  adverse  employment  actions —
demonstrate a causal link).

The final step for Scheurich in establishing a prima facie
case of retaliation in violation of the opposition clause is
demonstrating a good faith, reasonable basis for believing that the
underlying, allegedly discriminatory practices which she opposed
constituted a violation of Title VII.   As discussed above, this
requirement has both a subjective component and an objective
component.   First, the court (and probably defendant too) is

51

persuaded that Scheurich subjectively believed she had been the
victim of unlawful sex discrimination.   The question remains
whether her belief was objectively reasonable. This court finds it
was not.

Scheurich was insubordinate to her immediate supervisor
(Hester), openly, directly, and repeatedly.  She ridiculed Hester
as a manager, and disparaged his efforts at disciplining her and at
resolving their problems.  She openly discussed their counseling
despite his instruction to maintain confidentiality.  Furthermore,
Scheurich initially challenged the actions of only Hester, though
others were involved or responsible for some of the alleged
discriminatory actions.  One of the most serious incidents which
she claimed was discriminatory was Hester's request that Scheurich
provide or confirm the password to the computer database.  Hester
made this request on a Saturday, the day upon which he became aware
of the situation.  He was concerned about the threats plaintiff
reportedly had made.   Scheurich vociferously and adamantly
protested this request and initially refused to honor it.  She was
asked in deposition whether she would have given Hester the
requested information if he had asked during the work week, and she
responded:  "Yes, no problem.  It wouldn't have been an issue at
all."  (Plaintiff's deposition, Vol. I, at 103.)

52

The court finds that the cries of discrimination were merely knee-jerk reactions Scheurich had to situations at work which she found unpleasant, regardless of whether the situation was of her own making. Scheurich cannot demonstrate an objectively reasonable basis for believing that the underlying, allegedly discriminatory practices which she opposed constituted a violation of Title VII. Accordingly, summary judgment is proper for this claim.

3. **Claim under the participation clause**

Scheurich's remaining claim falls under the participation clause of § 704(a). The "participation" at issue is based upon the first charge of discrimination Scheurich filed with the EEOC on May 7, 1996. That action precipitated an investigation into the problems between Hester and Scheurich by Rosler and, ultimately, to Rosler's issuance of a "Warning Notice" to Scheurich upon completion of the investigation on May 10, 1996. The notice warned that "further instances of insubordination and refusal to follow the instructions of her manager will result in further disciplinary action up to and including termination of employment." (Plaintiff's deposition, exhibit 15.) One month and two days later, on June 12, Rosler, Hester, and Human Resources Specialist Terri Howe issued a "Performance Improvement Counseling" report to Scheurich following her final incident with Hester involving the database password. The report cited several performance

53

deficiencies and points for corrective action. Threatening behavior was an area targeted for improvement. The description of such behavior expressly included "public discussion or action concerning legal issues." (*Id.*, exhibit 17.) Plaintiff resigned and accepted other employment at a higher salary on July 18, 1996.

The filing of this charge constitutes expression protected by the statute. For purposes of this motion only, the court will consider the May 10 and June 12 negative job evaluations as adverse employment actions. *See Wyatt v. City of Boston*, 35 F.3d 13, 15-16 (1st Cir. 1994). Thus, plaintiff has satisfied the first and second elements of her prima facie case.

Analysis of the third and final element of plaintiff's prima facie case, a causal connection between the participation and an adverse employment action, draws the court's attention not only to the temporal proximity between the charge and the two evaluations, but to the language in the June 12 report as well. The report delineates "action concerning legal issues" as unacceptable threatening behavior. This language appears in the section entitled "Corrective Action," which begins with the warning that "[f]ailure to respond to the request for improvement in behavior and performance can and will result in further disciplinary action, up to and including termination." (Plaintiff's deposition, exhibit 17.)

54

Statements of decisionmakers directly related to the contested
employment action are direct evidence of discrimination. *See,
e.g., Carter v. Three Springs Residential Treatment*, 132 F.3d 635,
641 (11th Cir. 1998) ("[D]irect evidence relates to actions or
statements of an employer reflecting a discriminatory or
retaliatory attitude correlating to the discrimination or
retaliation complained of by the employee.") (quoting *Caban-Wheeler
v. Elsea*, 904 F.2d 1549, 1555 (11th Cir. 1990) (internal quotation
marks omitted)); *Trotter v. Board of Trustees of the University of
Alabama*, 91 F.3d 1449, 1453 (11th Cir. 1996) ("Statements
indicating ... bias on the part of a decisionmaker in an employment
setting can constitute direct evidence of ... discrimination in
Title VII cases.") (citations omitted); *Bell v. Birmingham Linen
Service*, 715 F.2d 1552 (11th Cir. 1983) (plaintiff's supervisor
voiced bias to plaintiff at the very moment he rejected plaintiff
for promotion), *cert. denied*, 467 U.S. 1204, 104 S.Ct. 2385, 81
L.Ed.2d 344 (1984); *Thompkins v. Morris Brown College*, 752 F.2d
558, 561, 563-64 (11th Cir. 1985) (statement by decisionmaker that
he saw no need for a woman to have a second job constituted direct
evidence of discriminatory intent).

Direct evidence is evidence which, if believed, proves the
existence of a fact in issue without the need to engage in the

55

processes of inference or presumption. *See, e.g., Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642 (11th Cir. 1998) ("Direct evidence, by definition, is evidence that does not require ... an inferential leap between fact and conclusion."); *Merritt v. Dillard Paper Co.*, 120 F.2d 1181, 1189 (11th Cir. 1997) (defining direct evidence as "evidence, which if believed, proves existence of fact in issue without inference or presumption"); *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 n.6 (11th Cir. 1987). In other words, direct evidence of discrimination or retaliation ordinarily requires no inference for a finding of an unlawful intent behind an adverse employment action.

The vagueness of the prohibition on "action concerning legal issues" makes it difficult to prove anything without an inference or a presumption. Although the court therefore finds that the language in the June 12 report which is discussed above may not be direct evidence of discriminatory intent, the court also finds this evidence sufficient to create a genuine issue of material fact as to whether the disciplinary reports were issued in retaliation for Scheurich having filed a charge of discrimination with the EEOC shortly before.

56

## III. CONCLUSION

The court thus finds defendant's motion for summary judgment is due to be granted in part and denied in part.   An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this __22nd__ day of February, 1999.

United States District Judge